power of a prohibition it was first necessary to inter-
pose a plea to the jurisdiction.

Fourth. That a territorial district court sitting for
the trial of causes arising under the constitution and
laws of the United States is not, like a magistrate, a
court of inferior, peculiar, and limited jurisdiction, in
the sense that places its procedure entirely under the
control of another district judge sitting at chambers,
outside of the judicial district, and having no other
knowledge of the proceeding sought to be prohibited
than may be given to him by one of the litigants.

Fifth. That the legislature never contemplated
the bestowal of any such extraordinary power; and

Sixth. That an act of the legislature which should
undertake to confer on a judge sitting at chambers the
power to prohibit by his fiat another judge holding
court in another district from the exercise of a juris-
diction conferred on it by an act of the legislature,
passed in pursuance of authority conferred by congress,
and approved by congress, would be so absolutely void
that no court could afford to recognize its validity in
any proceeding.

---

[No. 573.   September 4, 1894.]

## UNITED STATES OF AMERICA, Appellees, v. STEPHEN M. FOLSOM, Appellant.

CRIMINAL LAW—MAKING FALSE ENTRIES ON BOOKS OF NATIONAL BANK—
CONSOLIDATION OF OFFENSES IN ONE INDICTMENT.—In a prosecution
on indictments, against the president of a national bank, for making
false entries on the books of the bank, in reports to the comptroller
of the currency of the condition of the bank on the days named in the
call for such reports, the offenses charged in all the indictments
being of a like nature, the court having instructed the jury to con-
sider only the counts relating to the alleged false entries on the books
of the bank and a verdict accordingly returned of not guilty as to the
other counts, could have been presented in one indictment, under
section 1024, Revised Statutes of the United States, and it was
within the discretion of the court, for the avoidance of unnecessary
costs and undue vexation of the accused by a multiplicity of prosecu-

tions, to require only one trial upon all the charges in three of the indictments, which were consolidated, on motion of the prosecution, together with the fourth added, on motion of the defendant.   Mutual Life Ins. Co. v. Hillmon, 145 U. S. 285.

ID.—LIMITATION—JURISDICTION.—In such prosecutions, the United States statute of limitations, applicable to the offenses charged, governs, and not the territorial statute.   In no event would the territorial law apply in such cases.   The jurisdiction of the district courts trying offenses of such character is as separate and distinct from the jurisdiction in trying territorial causes as is the jurisdiction of the state courts and the United States courts held within the states.

ID.—EVIDENCE.—Where, in such prosecution, the court excluded all testimony relating to alleged false entries in the reports alleged to have been made to the comptroller of the currency, and the jury, under the directions of the court, returned a verdict of not guilty of such alleged entries, and the case proceeded merely upon the alleged false entries on the books of the bank on July 9, 1891, and the court, for the purpose of showing the intent of defendant in making such false entries on the books as of that date, permitted the jury to consider the facts that a report of the condition of the bank as of said date was called for by the comptroller and that such report was prepared and transmitted, the admission of such testimony for such purpose was not error.

ID.—REOPENING OF CASE FOR INTRODUCTION OF EVIDENCE—INSTRUCTIONS. It was within the discretion of the court below to reopen such case for the introduction of evidence as to a call for a report, and no abuse of such discretion appearing, the court did not err.   Nor did the court err in making more explicit its instructions, it not appearing that the rights of defendant were prejudiced thereby.

ID.—INSTRUCTIONS.—An instruction, in such case, that if the jury believed "beyond a reasonable doubt that the wrongful act had been intentionally committed, prima facie, but not conclusively, a guilty intent existed," was a proper instruction.

ID.—DISQUALIFICATION OF PETIT JURORS—NEW TRIAL.—An objection to the qualification of petit jurors, on the ground of over age, if any such disqualification exists, to be available, must be made by challenge before verdict; otherwise such jurors will be competent, and a new trial will not be granted on the ground of such disqualification, unless the defendant can show that injury has resulted to him therefrom.

ID.—FALSE ENTRIES—INTENT—VERDICT.—In such prosecution, the jury were justified in finding that false entries were made with the intent charged in the indictment, by the testimony of the accused that said entries were made under his direction, with his knowledge that they were not transactions of the day on which they were entered on the books of the bank.

APPEAL from a judgment of the Second Judicial District Court, convicting the defendant of making false entries on the books of the Albuquerque National Bank, of which he was president.  Affirmed.

The facts are stated in the opinion of the court.

NEILL B. FIELD and F. W. CLANCY for appellant.

Section 1024, Revised Statutes of the United States, under which the court consolidated these cases, has nothing to do with the practice in territorial courts; it refers exclusively to courts of the United States. Clinton v. Englebrecht, 13 Wall. 434; Hornbuckle v. Toombs, 18 Id. 648; United States v. Reynolds, 98 U. S. 145; Same v. Same, 1 Utah, 319. See, also, sec. 910, Revised Statutes, United States; sec. 1910, Id., Organic Act, sec. 10.

When congress conferred upon the territorial district courts the same jurisdiction in causes arising under the constitution and laws of the United States as is exercised by circuit and district courts of the United States, the powers of the latter courts were not conferred. United States v. Williams, 4 Cranch, C. C. Rep. 381; In re George E. Spencer, McArthur and Mackey, 445.

The court should have allowed defendant's peremptory challenge to the juror Chavez. Comp. Laws, N. M. 1884, sec. 2466; Cooley's Const. Lim., p. 319; In re Haynes, 30 Fed. Rep. 768.

The alleged offenses were barred by the territorial statute of limitations and ought not to have been permitted to go to the jury. Comp. Laws, 1884, sec. 2491; Clinton v. Englebrecht, 13 Wall. 434; Hornbuckle v. Toombs, 18 Id. 648; United States v. Reynolds, 98 U. S. 145.

Improper evidence was admitted in this case, which, though afterward withdrawn from the jury,

operated to the prejudice of defendant, and deprived him of a fair trial.    Springer v. Young, 3 Pet. 337. See, also, Marshall v. State, 5 Tex. App. 273; State v. Mix, 15 Mo. 160; State v. Wolf, Id. 168; State v. Daubert, 42 Id. 246; Gulf, Colorado & S. F. R'y Co. v. Levy, 59 Tex. 542; Tucker v. Hamlin, 60 Id. 171; Lafayette, etc., R. R. Co. v. Winslow, 66 Ill. 219; Lycoming Fire Ins. Co. v. Reuben, 79 Id. 402; Howe Machine Co. v. Rosine, 87 Id. 105; Cobb v. Griffith, etc., Co., 12 Mo. App. 130; Hopt v. Utah, 120 U. S. 438.

The court erred in reopening the case at the request of the prosecution for the avowed purpose of determining the intent of defendant to deceive the comptroller. No such intent was alleged in the indictment, and such an intent is not within the purview of the statute. United States v. Bartow, 10 Fed. Rep. 874.

There is no evidence in this case to show that defendant is guilty of the offenses charged. If the evidence shows any offense, it tends to prove that defendant may have aided or abetted such making, but did not make any entries himself. Under the statute it is one offense to make the forbidden entry, and another and distinct offense to aid or abet the making. Rev. Stat. U. S., sec. 5209. See, also, Stamper v. Commonwealth, 7 Bush (Ky.), 612; Bland v. Commonwealth, 10 Id. 622; Able v. Commonwealth, 5 Bush. 698; State v. Littell, 12 So. Rep. (La.) 750; United States v. Potter, 56 Fed. Rep. 93, 101; United States v. Eque, 49 Id. 852; United States v. French, 57 Id. 382.

The court erred in reading from a book the statute under which the indictments were found, without setting out the same in writing in its instructions. Territory v. Perea, 1 N. M. 631; People v. Beler, 6 Cal. 247; People v. Payne, 8 Id. 343; People v. Demint, Id. 423; People v. Prospero, 44 Id. 186; People v.

Max, 45 Id. 254; People v. Ah Fong, 12 Id. 345; People v. Sanford, 43 Id. 35; People v. Chavez, 26 Id. 79; Stewart v. State, 50 Miss. 589; State v. Cooper, 45 Mo. 65; Gile v. People, 1 Colo. 61; Feriter v. State, 33 Ind. 284; Widner v. State, 28 Id. 394; People v. Woppner, 14 Cal. 437; State v. Gilmore, 26 La. Ann. 599; Ray v. Wooten, 19 Ill. 82.

The burden of proof never shifts in criminal cases, but the court in effect instructed the jury that it might have been shifted to defendant. This instruction was erroneous, and the only thing to be said on the other side is that other portions of the charge may have cured the error. This is an unsafe and delusive method of meeting error. The better rule is whenever error appears, the presumption is that it has been prejudicial. Thompson v. Wilson, 34 Ind. 97; Bellefontaine R'y Co. v. Hunter, 33 Id. 355; Wiseman v. Wiseman, 73 Id. 116; Wiley v. Givens, 6 Gratt. 284, 285; State v. Patton, 13 Ired. Law, 422; Jackson v. Feather River W. Co., 14 Cal. 25; Carpentier v. Williams, 25 Id. 197; Norwood v. Kenfield, 30 Id. 399; Kepler v. Conkling, 89 Ind. 395; Peterson v. Hutchinson, 30 Id. 38; Union Bank v. Mott, 39 Barb. 185; Thatcher v. Jones, 31 Me. 534; Lane v. Crombie, 12 Pick. 177; Green v. White, 37 N. Y. 406, 407. See, also, People v. Elliott, 80 Cal. 304; People v. Perini, 94 Id. 575; People v. Ribolsi, 89 Id. 498–500; People v. Cheong Foon Ark, 61 Id. 528; People v. Coughlin, 65 Mich. 705; People v. McWharter, 91 Mich. 643; Com. v. McKie, 1 Gray (Mass.), 61; Doan v. State, 26 Ind. 495; Clem v. State, 42 Id. 420; Parker v. State, 35 N. E. Rep. 1108; People v. Millard, 53 Mich. 70; State v. Huffman, 16 Pac. Rep. (Ore.) 644, 645.

The judge stated to the jury what he understood the defendant's evidence to be, and in this undertook to do what should have been left to the jury. Prairie Co. v. Doig, 70 Ill. 54, 55; Comp. Laws, N. M., sec. 2055.

The court failed to properly instruct the jury as to the evidence of an accomplice. United States v. Kessler, 1 Bald. 22; Territory v. Kinney, 3 N. M. (Gil.) 148; 1 Bish. Crim. Proc., sec. 1169; United States v. Troax, 3 McLean, 234.

The court erred in its definition of corroborating evidence. Gildersleeve v. Atkinson, 6 N. M. 257; Remuzon v. Territory, 3 N. M. 651; State v. Buckley, 22 Pac. Rep. 840; Com. v. Holmes, 127 Mass. 424; People v. Melvane, 39 Cal. 615; People v. Clough, 73 Id. 349; State v. Raymond, 20 Iowa, 587.

The court erred in its definition of a reasonable doubt. Dunn v. People, 109 Ill. 645; Miller v. People, 39 Id. 463, 464; May v. People, 60 Id. 120; Cunningham v. People, 88 Id. 462; State v. Pierce, 65 Iowa, 89, 90; Minich v. People, 8 Colo. 454.

The court told the jury, in substance and effect, that the books of the bank and the report must correspond. This was error. United States v. Graves, 53 Fed. Rep. 634.

The court erred in its charge in not submitting the intent of defendant as a question of fact to the jury. People v. Flack, 125 N. Y. 334; People v. Ribolsi, 89 Cal. 498; State v. Lynott, 5 R. I. 295; Bond v. Warren, 8 Jones' Law (N. C.) 191; Glover's Administrator v. Duhle, 19 Mo. 360; Choquette v. Barada, 28 Id. 491; Fine v. St. Louis Pub. School, 39 Mo. 67.

The presence on the jury of persons declared by the statute to be disqualified is fatal to the verdict. Laws, 1891, chap. 95, sec. 2; Hardy v. Sprowl, 32 Me. 312; Mabry v. State, 14 So. Rep. (Miss.) 267; Chase v. People, 40 Ill. 355–357; State v. Jackson, 27 Kan. 583, 586; Eastman v. Wight, 4 Ohio St. 160; Parks v. State, Id. 236; State v. Forshner, 43 N. H. 90, 91; Briggs v. Town of Georgia, 15 Vt. 71, 72; State v. Groome, 10 Iowa, 316; State v. Davis, 12 R. I. 493; Hill v. People, 16 Mich. 355; Burrows v. State, 33 Ga. 406; Cohron v.

State, 20 Id. 752; State v. Nash, 13 So. Rep. (La.)
734; Lamphier v. State, 70 Ind. 321.    See, also, fol-
lowing cases of decisions on objections to qualifications
of jurors made after verdict:    Meyer v. State, 19 Ark.
163; Watts v. Rutte, 30 Ohio St. 35; Cain v. Cain, 1
B. Mon. (Ky.) 213; Stripling v. State, 3 S. E. Rep.
277; Brown v. State, 26 Ga. 441; Sellers v. People, 3
Scam. 414.

The counts of the indictments submitted to the jury
do not allege with sufficient certainty wherein the entries
are false.    United States v. Simons, 96 U. S. 360;
United States v. French, 57 Fed. Rep. 387; Remuson
v. Territory, 3 N. M. (Gil.) 650; United States v. Chap-
man, 3 McLean, 390; United States v. Potter, 56 Fed.
Rep. 89; United States v. Cruikshank, 92 U. S. 542.

J. B. H. HEMINGWAY, United States attorney, for
United States.

The adjudicated cases on the subject do not go to
the extent of displacing a United States statute upon a
special subject in favor of a general territorial statute
adopting the rules of the common law.    Page v. Burn-
stine, 102 U. S. 668.

It is admitted in Hornbuckle v. Toombs, 18 Wall.
648, that the effect of section 1891, Revised Statutes of
the United States, is to import into the territories
"laws of a general character and universal application,
but not those of specific application."    And section
1024 is clearly of general, and not specific, applica-
tion.

But even at common law, in force in this territory,
there is no rule or reason to prevent the consolidation
of indictments for similar offenses of the grade of mis-
demeanors.    United States v. Vigil, 7 N. M. 298. See,
also, Withers v. Commonwealth, 5 Serg. & R. 58;
Tweed's Case, 60 N. Y. 559.

A construction that would limit the operation of section 1024, Revised Statutes, would preclude any reason for its enactment, for it was already the practice to try separate indictments against the same defendant together at the same time, subject to the exercise of the court's discretion.    1 Bish. Crim. Proc., sec. 1042.

If the territorial statute of limitation is applicable at all in this case, it must be applied in full, so as to fix the grade of the offense as well as the limitation.    But the territorial legislature has no power to establish the grade of an offense against the United States.    U. S. v. Vigil, 7 N. M. 298.    See, also, McGlinchy v. United States, 4 Cliff. C. C. 319.

As to disqualifications of jurors, see Laws, 1891, chap. 95, sec. 2; 1 Thompson on Trials, sec. 116, and citations.    And as to principle of practice generally recognized in the United States, see Territory v. Yarberry, 2 N. M. 391; Territory v. Anderson, 4 N. M. (Gil.) 229; Territory v. Baker, Id. 275; Wassum v. Feeney, 121 Mass. 93; Johns v. Hodges, 60 Md. 215.

Appellant, having failed to inquire as to the age of the juror, Jose Dario Aragon, was guilty of a want of diligence, and is deemed to have waived objection on that account.    Watts v. Ruth, 30 Ohio St. 32; Hollingsworth v. Duane, Wallace, C. C. 147; Gillespie v. State, 8 Yerg. 507; Calhoun v. State, 4 Humph. 477.

Unless the record shows that the trial resulted in an unjust verdict, this court should not grant a new trial, even if there was error committed in the court below.    1 Thomp. on Trials, 122, and note 2; Brown v. State, 60 Miss. 447.

H. B. FERGUSSON, special assistant to United States attorney.

It is not reversible error to orally instruct in part, unless the oral portion of the charge is preserved by exception duly taken, and is essentially erroneous and

prejudicial to defendant.    Leonardo v. Territory, 1 N. M. 291.

Where the charge as a whole fairly and fully submits the law of the case, judgment will not be reversed because extracts apart from their connection need qualification.    Evanston v. Gunn, 99 U. S. 660.

Upon the subject of intent, and upon the law relating to the falsification of bank books, overthrowing the position of counsel for defendant, that the defendant was shown to be only an aider and abettor, and not the principal, see  U. S. v.  Allen, 47 Fed. Rep. 696; U. S. v. Mears, 42 Id. 599;  U.  S.  v.  Hughitt, 45 Id. 47;  U. S. v. Potter, 56 Id. 83;  U. S. v. Britton, 107 U. S. 655;  U. S. v. Lee, 12 Fed. Rep. 816;  U. S. v. Harper, 33 Id. 471;  U.  S.  v.  Lee, 12 Id. 816;  U.  S.  v. French, 57 Id. 382;  U. S. v. Work, Id. 391.

The power of consolidation is a power inherent in courts at common law, and section 1024 is merely enacting the common law for the benefit of the circuit and district courts of the United States.    Putnam v. Lyon, 32 Pac. Rep. 492;  Pelzer Mfg. Co. v. Insurance Co., 15 S. E. Rep. 562;  Russell v. Chicago Tr. & Sav. Bank, 29 N. E. Rep. 37;  Mutual Life Ins. Co. v. Hillmon, 145 U. S. 285, and cases cited;  Grant v. Davis, 31 N. E. Rep. 587, and cases cited;  1 Am. and Eng. Encyclopedia of Law, 184a, and cases cited;  City of Springfield v. Sleeper, 115 Mass. 587.    See, also, Patterson v. Eakin, 87 Va. 49.

As to the proposition that, after consolidation, the case is tried as one cause, see Mutual Life Ins. Co. v. Hillmon, 145 U. S. 285;  Hiscox v. New York Stadts Zeiting, 23 N. Y. 682;  30 Abb. N. C. 131;  23 Civil Prac. R. 87;  Union Pacific R'y Co. v. Jones, 49 Fed. Rep. 343.

A merely statutory disqualification, and one not going to the jurors' competency and impartiality, or to his character, must be taken advantage of before trial,

and can not be for the first time objected to after verdict.    King v. Sutton, 8 B. & C. 417; 1 Bish. Crim. Prac., sec. 923; Brewer v. Jacobs, 22 Fed. Rep. 217; United States v. Gale, 109 U. S. 65; Queen v. Hepburn, 7 Cranch, 297; Hollingsworth v. Duane, 4 Dall. 353; United States v. Baker, 3 Ben. 68; Fisher v. Yoder, 53 Fed. Rep. 565.    See, also, Wassum v. Feeney, 121 Mass. 93; State v. Vogel, 22 Wis. 471; State v. Cosgrove, 16 Atl. Rep. 900; Williams v. State, 37 Miss. 407; Ryan v. Riverside & Oswego Mills, 8 Atl. Rep. 246; Trueblood v. State, 1 Tex. App. 650; John v. Hodges, 60 Md. 215; Burns v. State, 7 S. E. Rep. 88; Woodward v. Dean, 119 Mass. 297; State v. Jackson, 27 Kan. 581; Croy v. State, 32 Ind. 384; Simmons v. McConnell's Adm'r, 10 S. E. Rep. (Va.) 838; State v. White, 68 N. C. 158; Green v. State, 59 Md. 123; Sutton v. State, 20 S. W. Rep. 564; Beck v. Thompson, 7 S. E. Rep. 447; Richards v. Moore, 15 Atl. Rep. 119; Moore v. Brigham, 19 Pick. 368; Seacord v. Burling, 1 How. Pr. (N. Y.) 175; Daniel v. Guy, 23 Ark. 50; State v. Quarrel, 1 Am. Dec. 637; Orcutt v. Carpenter, 4 Id. 722; Leeper v. State, 14 S. W. Rep. 398.

As to the charge of the court as to the duties of the comptroller in relation to national banks, and the relation of reports called for by him to the true condition of the bank, see United States v. Fish, 24 Fed. Rep. 585; United States v. Allen, 47 Id. 696; United States v. Harper, 33 Id. 4.

As to the claim of appellant that the indictment charges no crime, see United States v. Britton, 107 U. S. 955; United States v. Northway, 120 U. S. 327.

And as to the correctness of the charge upon the subject of corroborating evidence, see Whar. Crim. Ev., sec. 442.

Where the question is one of intent, evidence of other and extraneous offenses may be introduced in the trial of an offense where such extraneous offenses

tend to illustrate the intent with which the offense on trial was committed. The evidence in this case showed that the books were falsified for the express purpose of falsely swelling the showing of the report. Whar. Crim. Ev., sec. 52; 3 Rice on Ev. 211; State v. Raymond, 53 N. J. Law. 260; Wood v. U. S., 16 Pet. 342; 6 Am. and Eng. Encyclopedia Law, p. 501; 4 Id. 858.

SMITH, C. J.—The appellant, Stephen M. Folsom, was indicted in the district court for the Second judicial district, at the March term, 1894, upon four indictments, containing, respectively, four, thirteen, four, and seventeen counts. The first indictment, the first six counts of the second indictment, the third indictment, and the first ten counts of the fourth indictment relate to alleged false entries made by defendant, as president of the Albuquerque National Bank, in reports to the comptroller of the currency of the condition of said bank on the days in the call for such reports named; and the remaining seven counts in each of the second and fourth indictments are as to alleged false entries made in the books of said bank as of its business on the ninth day of July, 1891, the seventh count in the second indictment charging the same offense as the eleventh in the fourth indictment, and so on successively to the thirteenth count in the second and to the seventeenth in the fourth indictment, making fourteen counts in the two charging only seven offenses. The first, second, and fourth of these indictments were on the motion of the prosecution, over the objection and exception of the defendant, consolidated, and directed to be tried as one case; and the defendant, stating that he in no way waived his exception to the consolidation of the other three, moved that the third be consolidated, which was ordered. On the four indictments thus consolidated as one case the

defendant was put on trial, and at the close of the testimony of the prosecution, moved for an instruction of not guilty as to each and every count, which motion was sustained as to all counts in said indictments which related to false entries in reports to the comptroller; and the court, permitting the prosecution to reopen as to alleged false entries in the books of said bank, denied the motion of defendant as to those counts.    In passing upon said motions and in the instructions when submitting the case to the jury, the court instructed that no testimony as to alleged false reports was to be considered by them, except that they might weigh the testimony as to the naking of the reports of the bank's business as of July 9, 1891, as relating to the intent of the defendant in making such false entries on the books of the bank as of said day, if they should find any false entries were so made.    The prosecution was then permitted to introduce evidence to show that a report for the bank's business of said July 9, 1891, was called for by the comptroller.    The testimony remaining before the jury for their consideration referred to the corporate existence of the Albuquerque National Bank as a national bank, to the defendant as its president, on the ninth day of July, 1891, and subsequently, and to a report and call for his business on said day, to the action of the defendant, after such call, causing the books of the bank to be changed by the insertion of items in the business of said ninth day of July, 1891, six of said items being set back from the business of said bank on the eleventh day of July, 1891.    The said items consisted of four charges against other national banks, aggregating $30,000, and a credit to another national bank of $7,000, and a credit to said bank of certificates of deposit of $20,000, all of which were shown by undisputed evidence to represent actual transactions of said bank, occurring, as shown by evidence, to be as of said July 11, 1891.    The sev-

enth item related to the entry of a charge against the
New Mexico Savings Bank & Trust Company of
$15,000, as to which there was proof to show that
defendant directed on July 21, 1891, a clerk of his
bank to insert said item of $15,000 in the day's busi-
ness of July 9, 1891, so as to make it appear that said
savings bank was indebted to the Albuquerque National
Bank in the said amount of $15,000. The said defend-
ant also directed the said clerk to make counter entries
as to the said seven entries in the business of July 10,
1891. The $15,000 item represented no actual trans-
action. The said clerk was thereupon directed by the
said president to prepare a report for transmission to
the comptroller of the business of the bank of July 9,
1891, as the said business appeared with the said seven
entries so placed, as heretofore represented, by the
direction of the said president on about the said twen-
ty-first day of July, 1891. The said clerk accordingly
prepared said report, which was duly signed by the
cashier, and attested by the defendant and two others
as directors of said bank, and transmitted in due course
of mail to the comptroller of the currency. Defendant
testified in his own behalf that he made arrangements
in Kansas City as to all the items except the $15,000,
relating to the New Mexico Savings Bank & Trust
Company, and telegraphed to the Albuquerque
National Bank on the same day, upon which he made
said arrangements in relation thereto; that, when he
returned home, he found these items on the books of
the bank as of the eleventh day of July, and directed
them to be set back to July 9, 1891, because he believed
that the arrangements were actually consummated on
said ninth day of July; that he didn't remember hav-
ing any connection whatever with the $15,000; and
that he had given the said clerk no direction in refer-
ence thereto. The prosecution, in rebuttal, put in evi-
dence letters of the defendant showing that no

arrangement was completed as to said six items until July 11, the said defendant not having arrived in Kansas City until July 10. A large amount of expert and documentary evidence was introduced relating to the books of the bank and its business. The case was argued, and instructions given, and upon the fourteen counts upon which the case was submitted, a verdict of guilty was returned by the jury. Motions for a new trial and in arrest of judgment were made and overruled, and the case is now before this court upon appeal and numerous assignments of error, relating to the instructions of the court, to the disqualification of two jurors upon said jury by virtue of their age, to the action of the court in permitting the prosecution to reopen the evidence for the introduction of testimony as to a demand for a report by the comptroller, and upon the further ground that there was no testimony to support the verdict of the jury. Error is also claimed as to the action of the court in consolidating said seven indictments, and directing trial upon them as one case. In considering this case, we will address ourselves to the assignments of error in an order inverse to that in which they are set forth in the foregoing statement.

The question of consolidation of indictments ceases, in our opinion, to be a practical question in this case, by reason of the court below instructing the jury to consider only the counts relating to alleged false entries in the books of the Albuquerque National Bank, and directed, and there was accordingly returned, a verdict of not guilty as to the other counts. The fourteen remaining counts were, in effect, one indictment. The seven charges in the one indictment were duplicated in the other indictment, which amounts to a pleading of the same matter twice. The instructions

MAKING false entries on books of national bank: consolidation of offenses in one indictment.

carefully guarded the defendant from all prejudice as
to said unnecessary pleading. We do not, however,
desire to be understood as intimating that any error
was committed in the order of consolidation, or in
entering upon the trial of said four indictments as one
case. The offenses charged in all the indictments are
of a like nature, and, we think, could have been pre-
sented in one indictment. One of the indictments, to
which there was no demurrer or objection, embraced
the only two classes of offenses which the four covered;
and our view is that the four, being consolidated,
became one indictment for trial, and it was fully within
the discretion of the court, both to avoid unnecessary
costs and undue vexation of the accused by multiplic-
ity of prosecutions, to require only one trial upon all
the charges on three of the indictments which were, on
motion of the prosecution, consolidated, together with
the fourth, added on motion of the defendant.
This discussion we consider to have been definitely set-
tled in Mutual Life Insurance Co. v. Hillmon, 145 U.
S. 285. See, also, section 1024 of the United States
Revised Statutes, which we consider in operation in
this territory in the trial of cause arising under the
laws of the United States.

In this connection we may briefly advert to the
contention of appellant's counsel that, because of the
limitation of two years, as prescribed by the territorial
LIMITATION: jur-  statute, to this class of offenses, instead of
isdiction.      three years, as fixed by the laws of the
United States, this offense is barred. We think that
our conclusion, heretofore set forth, that section 1024,
Revised Statutes, applies to trials of causes arising
under the laws of the United States, leads to the further
conclusion that the United States limitation law gov-
erns him, rather than that of the territory. We are
also of the opinion that, in any event, the territorial
law would not apply in this case, as the jurisdiction of

the district courts in trying offenses of this character is as separate and distinct from the jurisdiction in trying territorial causes as is the jurisdiction of state courts and United States courts held within the states. This contention of appellant, therefore, can not be sustained.

As to the exception that there is no evidence to support the verdict, we think that, for so voluminous a record as is presented for our consideration, the testimony is reduced to a narrow compass, and presents a direct issue of alleged false entries made, by direction of defendant, in the books of said bank, and that the jury's verdict is abundantly supported.

The objection that there was illegal evidence admitted refers, we take it, from the able and elaborate brief of counsel for appellant, to the testimony EVIDENCE. introduced on the trial relating to the making of false entries, which testimony the court instructed the jury they must disregard; and, upon the counts relating thereto, the court directed an acquittal. No specific evidence is objected to, and, if illegal evidence relating to such matters was allowed, it could not, under the instructions of the court, have been considered by the jury. The jury were allowed to weigh the facts that a report of the condition of the bank as of July 9, 1891, was called for by the comptroller, and that such report was prepared and transmitted, the said evidence being allowed as indicating the intent of the defendant in making false entries in the books as of said ninth day of July, 1891; and we do not see any error in the admission of such testimony for such purpose.

The alleged error in reopening the case for the introduction of evidence as to the call for a report is not well taken, as we are of the opinion that this matter was within the discretion of the court below, and is

REOPENING of
case for introduc-
tion of evidence:
instructions.

not reviewable here, unless the discretion be abused, and we do not recognize any mistake upon this point. Nor does it appear that the court below, in making more explicit its instructions, affected the rights of the defendant prejudicially.

There are numerous exceptions urged to the instructions of the judge who tried the case, relating mainly to those involving the intent of the defendant in directing said entries as of July 9, 1891. It is claimed for appellant that the charge, as a whole, was unfair to the defendant, and in that connection it is stated that the commendation indulged in by the court as to the wisdom of the law under which the indictment was found, and its extended remarks as to reports to the comptroller of the currency and the penalties for non-compliance or wrong compliance with demands for such reports, were prejudicial to the defendant. We can not agree with the criticism suggested, as it is the duty of the court and of the jury to maintain the law, and it is the right of the court to apprise the jury as to the law and its purpose; and inasmuch as the testimony tended to show that the making of reports had an intimate connection with the making of alleged false entries in the books, and that these false entries were made to meet the demand for such reports, it was the duty of the court to fully explain the purpose for which said reports were called. The instructions of the court on these points were lengthy, but it is not easy to see that they could have been less elaborate and yet present satisfactorily the features they covered in connection with the trial.

Returning to the instructions regarding intent, we find that precedents are numerous in the federal courts in cases of prosecutions for making false entries and embezzlement by officers of national banks which not only fully sustain the instructions given in this case,

INSTRUCTIONS.    but go far beyond the views enunciated by the trial judge.  Thus, we find in instructions to the jury by JACKSON, J. (now on the bench of the supreme court of the United States), in U. S. v. Harper, 33 Fed. Rep. 471, that the conclusion of guilty intent is drawn from the fact of a willful and intentional doing of a wrongful act, and that it devolves on the defendant to show that it is excusable.  In U. S. v. Graves, 53 Fed. Rep. 634, in U. S. v. Lee, 12 Fed. Rep. 816, and in U. S. v. Means, 42 Fed. Rep. 599,—all instances of instructions to juries in false entry and embezzlement cases,—it is held that every one is presumed to intend the legitimate consequences of his acts, and that, if he willfully and intentionally does a wrongful deed, he will not be permitted to say that there was innocent intent.  In the case at bar the defendant was permitted to testify that his acts were not committed with any wrongful intent, and the court below strongly cautioned the jury that, if they found there was an honest, unintentional mistake, the defendant should be acquitted.  The cases from California relied on so strongly by appellant's counsel do not, in our opinion, sustain their contention.  It appears that in People v. Ribolsi, 89 Cal. 498, the court held that it was error to instruct in the case under consideration that when the doing of the act which, if coupled with a guilty intent, would be a violation of law, is proven, the burden of showing the act to have been done without guilty intent is thrown upon the accused; and in its decision the supreme court approved the principle announced by the court below, the error being that it was not applicable to the case at bar.  Thus in the case of buying stolen goods, knowing them to have been stolen, with certain intents mentioned in the statute, the supreme court declared that the way in which the instruction was given misled the jury into presuming guilty intent from buying goods knowing them to have

been stolen, while the statute drew the conclusion of guilty intent from the proof of other facts showing the specific intent, set forth in the statute itself. People v. Perini, 94 Cal. 573, was a case exactly similar, and the court merely referred to People v. Ribolsi in reversing the lower court. All the other cases cited by counsel tend to support the principle that the burden of proof never shifts to the defendant to establish the facts from which intent can be inferred by the jury, but do not touch the question of guilty intent inferrable from facts satisfactorily established. In the case now under consideration the court instructed that, if the jury believed beyond a reasonable doubt that the wrongful act had been intentionally committed, prima facie, but not conclusively, a guilty intent existed. This principle we regard as sound in law. We have considered with care the instructions as a whole, and approve them as a fair and full exposition of the law. There may be inaccuracies in some respects, but we can not conclude that defendant was prejudiced, or that his legal rights were in the least unfavorably affected.

It is urged most vigorously by counsel for appellant that a new trial should have been granted, upon the ground that two of the jurors on the panel were disqualified, because they were over the age of sixty years. The record shows that the disqualification, if it in fact existed, was brought to the attention of the court in the motion for a new trial, accompanying which were the affidavits of appellant and his counsel and of other parties claiming to be cognizant of the ages of the jurors Jose Dario Aragon and Jose Rafael Sanches y Sedillo, together with extracts from the baptismal church register of the old Albuquerque Catholic church, pretending to be the record of the ages of the said persons. It appears in the affidavits of appellant and his counsel that neither knew of any disqualification of said jurors at the time the said

<span style="font-variant: small-caps">Disqualification of petit jurors: new trial.</span>

jury was impaneled; that they relied upon the examination of the persons accepted at the opening of the term of the court as to their qualifications, and were ignorant of the status of any of the said jurors; but that, during the progress of the trial of this case, one of the counsel "received a vague suggestion" that possibly Aragon was over sixty years of age; but that both counsel were so closely occupied with the trial that they had no opportunity or time to investigate the matter, and obtained no information until after the verdict had been rendered. It was also shown that Aragon had already testified in the United States court of private land claims that he was over sixty years of age. It appears as to Sanches that the name given in the baptismal certificate is that of Jose Rafael Refugio Querino, son of Gabriel Sanches and Juana Sedillo. Two witnesses, claiming to be older than Sanches, stated that he is the son of Gabriel Sanches and Juana Sedillo, and they believe him to be more than sixty years of age, but they do not pretend to state exactly the age of Sanches; one placing it at sixty-seven or sixty-eight and the other at sixty-three. If the baptismal certificate refers to the juror under consideration, he was at the time of the trial in his sixty-eighth year, and it would seem that such an advanced age would naturally have excited inquiry. It is shown by the record that inquiry of Sanches as to his age was made by counsel for defendant, and he said that he was fifty-six years old. Aragon, it seems, was not asked as to his age. The foregoing facts as to the ages of these jurors necessitates the determination by this court of the question whether the disqualification of jurors not challenged at the time of their selection, either through lack of knowledge or intentional omission, can be taken advantage of after verdict. We are not without authority upon this subject by the decisions of this court. In Anderson v. Territory, 4 N. M. 232, and Territory v.

Baker, 4 N. M. 275, it was decided that alienage, though a disqualification under the statute then in existence, was such a species of disqualification as could not be taken advantage of after verdict, it being a cause for challenge. Aliens do not belong to that class of persons liable to be summoned as jurors, the policy of the law being to make such persons ineligible because of their noncitizenship; while persons over the age of sixty years, formerly merely exempt, can not now be regarded as incompetent, except in the interest of the public. This court distinctly held in Anderson v. Territory that the accused should proceed by challenge to prevent an alien being retained on the panel to try him before he could be heard after verdict to object to the verdict because of such alienage. If noncitizenship is not such disqualification as to vitiate a verdict, it is illogical to contend that any disqualification of an intelligent citizen, whether such disqualification be express or implied, should produce that result. That age of itself, unaccompanied by any impairment of the intellect, should create incompetency for jury service, seems irrational; and it must be conceived that the statutory dictum proscribing such persons must have been induced by consideration in the interest of the territory, without reference to its effect upon the accused.

It appears that one of the counsel in this case for the defendant had been advised that one of the jurors exceeded the limitation of years fixed by the statute, but they did not regard this suggestion of sufficient moment to bring it to the attention of the court, or to object to further proceedings in the trial, upon the ground that the said juror was incompetent because of his age. It may be that counsel did not regard the age of the juror as material; and, in the absence of evidence to establish with absolute certainty that the said Sanches was objectionable in this respect, the court, in the interest and promotion of justice, may well have

regarded it in the same way.   But little reliance can be placed upon the ex parte statement of the two old men as to the age of Sanches, as against his own oath; and it would be a dangerous precedent to encourage the procurement of affidavits to annul a verdict not objectionable upon the merits of the case.   Whether the child who was baptized in 1826 under the name of Jose Rafael Refugio Querino Sanches was the juror of said name in part might properly cause the court below to entertain such a doubt upon the question as to require it to refuse a new trial upon the ground of the alleged defect in this juror, in the absence of any provision, claim, representation, or proof that the rights of the defendant were affected prejudicially in the least by the fact that the said Sanches was a juror. It is established by overwhelming preponderance of authority that the disqualification of petit jurors must be taken advantage of by challenge, upon the theory that proper diligence on the part of the acused can ascertain the status of the jurors offered in all respects, and that a failure to challenge for cause is an omission that amounts to a waiver of objection, even though the juror was within the statutory proscription, unless it should appear that such disqualification would operate injuriously to the accused in the rendition of the verdict.   The law seems to be that neither alienage, age, nor other such disqualification can vitiate a verdict; and, unless it can be shown that these conditions result in some injury to the accused, they can not be asserted after verdict as a reason for setting it aside.   We are of the opinion that the disqualifications, whether specified in express terms by statute or implied by the designation of a particular class as eligible for jurors, are, in effect, the same; and inasmuch as it is not disputed seriously that the latter class are ineligible only, and not incompetent, we can not appreciate the reason for any severer rule against the other.   Public policy induces the exclusion of both,

and the considerations that have prevailed with the courts to construe the law as to one are not less applicable to the other. Both are competent to serve if not objected to at the proper time; and the interests of the public that prevent the defeat of a trial, and the annulling of a verdict, because of the disqualification implied, should be equally protected against such consequences when the disqualification is in terms expressed. In either case prejudice shown would be properly ground for a new trial, and in either case the absence of it must remove all valid ground of objection to the verdict. The application of these principles to the case under consideration approves the action of the court in refusing to grant a new trial upon the ground of the disqualification of the two jurors, and in passing judgment upon the verdict, so well supported by the evidence, properly submitted to the jury. It is not deemed essential to a proper consideration of the merits of this case to pass upon the the multiplicity of FALSE entries: errors assigned, as we are impressed that intent: verdict. the jury, in finding that false entries were made with the intent alleged in the indictment, is sustained by the testimony of the defendant that the said entries were made under his direction, with the knowledge on his part, as shown by the evidence, that they were not transactions of the day on which they were entered in the books of the bank. Judgment of lower court affirmed.

FREEMAN, FALL, and LAUGHLIN, JJ., concur.